IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORDTECH SYSTEMS, INC., a California corporation, | No. 2:04-cv-01971-MCE-EFB |
| Plaintiff, | |
| v. | **JURY INSTRUCTIONS** |
| INTEGRATED NETWORK SOLUTIONS, INC., a Nevada corporation, et al., | |
| Defendants. | |

_____/

JURY INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

PDF created with pdfFactory trial version www.pdffactory.com

JURY INSTRUCTION NO. 2

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

PDF created with pdfFactory trial version www.pdffactory.com

<u>JURY INSTRUCTION NO. 3</u>

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits which are received into evidence; and

3.    any facts to which the lawyers have agreed.

JURY INSTRUCTION NO. 4

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, have said in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

PDF created with pdfFactory trial version www.pdffactory.com

JURY INSTRUCTION NO. 5

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

JURY INSTRUCTION NO. 6

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

JURY INSTRUCTION NO. 7

Certain charts, summaries and/or devices not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and/or other devices and determine the facts from the underlying evidence.

JURY INSTRUCTION NO. 8

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

JURY INSTRUCTION NO. 9

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Court Security Officer, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

JURY INSTRUCTION NO. 10

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

PDF created with pdfFactory trial version www.pdffactory.com

JURY INSTRUCTION NO. 11

If anyone were in possession of or entitled to a valid license from Wordtech Systems for the sale of products in conformance with the patent license, then that person or entity is authorized to sell the products without infringing the patents as set forth in this lawsuit.

JURY INSTRUCTION NO. 12

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims."

PDF created with pdfFactory trial version www.pdffactory.com

When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review references if they are submitted to the PTO by the applicant that may or may not be prior art. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art and other references that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus would be "allowed." This

PDF created with pdfFactory trial version www.pdffactory.com

writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which is confidential between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material is kept secret between the applicant and the PTO for some time, often until the patent is issued, when it becomes available to the public.

PDF created with pdfFactory trial version www.pdffactory.com

<u>JURY INSTRUCTION NO. 13</u>

The Court has already made a determination that the patents at issue in this case, Patent 298, Patent 198 and Patent 932, are valid.  As such, the defendants cannot claim and are not entitled to a defense that Patent 298, Patent 198 and Patent 932 or any claims thereunder are invalid.

PDF created with pdfFactory trial version www.pdffactory.com

JURY INSTRUCTION NO. 14

I will now show each of the patents at issue and point out certain parts, including the specifications, the drawings and the claims. I do not intend by pointing out any part of these patents to place any undue emphasis on the parts I show to you. Rather, I do so only to generally familiarize each of you with the look and contents of the patents which will be discussed in this trial. I am also going to now describe for you a glossary of terms which you may refer to at any time during this trial to help you understand the terms being used.

PDF created with pdfFactory trial version www.pdffactory.com

JURY INSTRUCTION NO. 15

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are plaintiff WordTech and defendants INSC, Nasser Khatemi, and Hamid Assadian. The case involves United States patents obtained by inventor David Miller and transferred by David Miller to WordTech. The patents involved in this case are: United States Patent Number 6,141,298; United States Patent Number 6,532,198; and United States Patent Number 6,822,932, which all list David Miller as the inventor. For convenience, the parties and I will often refer to these patents as Patent 298, Patent 198 and Patent 932, 298, 198 and 932 being the last three numbers of their patent numbers.

WordTech filed suit in this court seeking money damages from INSC, Nasser Khatemi, and Hamid Assadian for allegedly infringing Patent 298, Patent 198 and Patent 932 by making, assembling, using, selling, reselling, offering for sale, importing or otherwise transferring products that WordTech argues are covered by claims of Patent 298, Patent 198 and Patent 932. WordTech also argues that INSC, Nasser Khatemi, and Hamid Assadian have contributed to and/or actively induced the infringement of these claims of Patent 298, Patent 198 and Patent 932 by others. The products that are alleged to infringe are, for example: Robocopier 600, Robocopier 6600, and Robocopier 8000 series, including Robocopier 8600 and Robocopier 8800.

INSC, Nasser Khatemi, and Hamid Assadian deny that they have infringed claims 1, 2, 3, 12, 13, 14, 15, 16 of Patent 298; claims 1, 2, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16 of Patent 198; and claims 1, 2 of Patent 932.  INSC, Nasser Khatemi, and Hamid Assadian also claim that they resold products manufactured by Primera Technology and Fortuna Systems which had a valid license with WordTech for such sales.

Your job will be to decide whether claims 1, 2, 3, 12, 13, 14, 15, 16 of Patent 298; claims 1, 2, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16 of Patent 198; and claims 1, 2 of Patent 932 have been infringed.  If you decide that any claim of Patent 298, Patent 198 and Patent 932 has been infringed, you will then need to decide any money damages to be awarded to WordTech to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

It is my job as judge to determine the meaning of any claim language that needs interpretation. You must accept the meanings I give you, if any, and use them when you decide whether any claim of the patent has been infringed.

JURY INSTRUCTION NO. 16

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  Where necessary, I have already made this decision.  The term "tower" is used in claim 1 of the 298 patent, claim 1 of the 198 patent and claim 1 of the 932 patent.  A "tower" is a vertical structure that supports the arm (Col. 3, entitled "The Pivotal Transport Tower" 298, 198, 932 patents and figs. 1-3).  The second step is to decide whether INSC, Nasser Khatemi, and/or Hamid Assadian have made, assembled, used, sold, resold, offered for sale, imported or otherwise transferred within the United States a product covered by a claim of Patent 298, Patent 198 and/or Patent 932. You, the jury, make this decision.

You must consider each of the asserted claims of the patent individually, and decide whether INSC, Nasser Khatemi, and/or Hamid Assadian's products have infringed that claim.

A patent may be directly infringed by "literal" infringement.  There are two ways in which a patent claim may be directly infringed.  A claim may be "literally" infringed, or it may be infringed under the "doctrine of

PDF created with pdfFactory trial version www.pdffactory.com

equivalents." The following instructions will provide more detail on these two types of direct infringement.

<u>JURY INSTRUCTION NO. 17</u>

To decide whether INSC, Nasser Khatemi, and/or Hamid Assadian's product or products literally infringe a claim of Patent 298, Patent 198 and/or Patent 932, you must compare each product with the patent claim and determine whether every requirement of the claim is included in that product. If so, INSC, Nasser Khatemi, and/or Hamid Assadian's product or products literally infringe that claim. If, however, INSC, Nasser Khatemi, and/or Hamid Assadian's product or products do not have every requirement in the patent claim, INSC, Nasser Khatemi, and/or Hamid Assadian's product or products do not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

JURY INSTRUCTION NO. 18

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims. Claims 12, 13, 14, 15, and 16 in the 298 patent contain "means-plus-function" requirements. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structure that perform the claimed function. A means-plus-function requirement does not cover all possible structure that could be used to perform the claimed function.

For purposes of this trial, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that correspond to these means-plus-function requirements. Specifically, I have determined that:

1. Arm 56 (Col. 6, Lns. 56-60), disk suction pickup unit 54 (Col. 7, Lns. 10-19), and alternatively, mechanical pickup mechanisms (Col. 6, Lns. 61-67) are the structure that perform the lifting means function identified in the means-plus-function requirement of claim 12

2. Transport tower 58 (Col 6, Lns. 53-56) is the structure that performs the rotating transport means function identified in the means-plus-function requirement of claim 12.

3.    Disk spindle member 52 (Col 6, Lns. 37-40) is the structure that performs the disk stacking means function identified in the means-plus-function requirement of claim 12.

4.    Host computer 12 including software (Col. 6, Lns. 22-29) and step 280 (Col.11 Lns. 30-38) is the structure that performs the master disk data transfer means of claim 13.

5.    Host computer 12 plus user interface software (Col. 6, Lns 22-25) is the structure that performs the user interface means of claim 14.

6.    Host computer 12 (Col. 10, Lns. 56-67) and steps 600, 610 (Col. 12, Lns. 62-67) is the structure that performs the defective CD-R detection means of claim 15.

7.    Disk reject slide 92 (Col. 8, Lns. 34-41) and step 610 (Col. 13, Lns. 1-9)  is the structure that performs the ejection means of claim 16.

8.    Print application unit 93 (Col. 8, Lns. 42-49) and host computer 12 (Col 13, Lns. 29-36) are the structure that perform the labeling means of claim 16.

In deciding if WordTech has proven that INSC, Nasser Khatemi and/or Hamid Assadian's products includes structure covered by a means-plus-function requirement, you must first decide whether the product has any structure that performs the function I just described to you.  If not, the claim containing that means-plus-function requirement is not infringed.

PDF created with pdfFactory trial version www.pdffactory.com

If you find that the INSC, Nasser Khatemi and/or Hamid Assadian's accused products do have structure that performs the claimed function, you must next identify the structure in INSC, Nasser Khatemi and/or Hamid Assadian's products that performs this function.  After identifying the structures you must then determine whether that structure is the same as or equivalent to the structures I have identified.  If they are the same or equivalent, the means-plus-function requirement is satisfied by that structure of the accused products.  If all the other requirements of the claim are satisfied by structures found in the accused products, the accused products infringes the claim.

In order to prove that a structure in the accused product is equivalent to the structure in the 298 patent, WordTech must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the 298 patent and the structures  in the accused product are not substantial. WordTech must also show that the structure was available on the date the 298 patent was granted.

PDF created with pdfFactory trial version www.pdffactory.com

JURY INSTRUCTION NO. 19

If you decide that INSC, Nasser Khatemi, and/or Hamide Assadian's product does not literally infringe an asserted patent claim, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

JURY INSTRUCTION NO. 20

WordTech also argues that INSC, Nasser Khatemi, and/or Hamid Assadian have contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by INSC, Nasser Khatemi, and/or Hamid Assadian, someone other than INSC, Nasser Khatemi, and/or Hamid Assadian must directly infringe a claim of Patent 298, Patent 198 and/or Patent 932; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed Patent 298, Patent 198 and/or Patent 932, then contributory infringement exists if:

(1)  INSC, Nasser Khatemi, and/or Hamid Assadian supplied an important component of the infringing part of the product;

(2)  The component is not a common component suitable for non-infringing use; and

(3)  INSC, Nasser Khatemi, and/or Hamid Assadian supplied the component with the knowledge of Patent 298, Patent 198 and/or Patent 932 with knowledge that the component was especially made or adapted for use in an infringing manner.

JURY INSTRUCTION NO. 21

In this case, WordTech argues that Defendants willfully infringed WordTech's patents.

To prove willful infringement, WordTech must first persuade you that the Defendants infringed a valid and enforceable claim of WordTech's patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, WordTech must persuade you that it is highly probable that prior to the filing date of the complaint, Defendants acted with reckless disregard of the claims of WordTech's patents.

To demonstrate such "reckless disregard," WordTech must satisfy a two-part test.  The first part of the test is objective.  WordTech must persuade you that the Defendants acted despite an objectively high likelihood that Defendants' actions constituted infringement of a valid and enforceable patent.  The state of mind of the Defendants is not relevant to this inquiry.  Rather, the appropriate inquiry is whether the defenses put forth by Defendants fail to raise any substantial question with regard to infringement, validity or enforceability.  Only if you conclude the defenses fail to raise any substantial question with regard to infringement, validity or enforceability, do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of the Defendants. WordTech must persuade you that Defendants actually knew, or it was so obvious that Defendants should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Defendants acted with reckless disregard for WordTech's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

(1)  Whether Defendants acted in a manner consistent with the standards of commerce for their industry;

(2)  Whether Defendants intentionally copied a product of WordTech covered by the patent; and

(3)  Whether Defendants relied on a legal opinion that was well-supported and believable and that advised Defendants (1) that the product did not infringe WordTech's patent or (2) that the patent was invalid or unenforceable.

JURY INSTRUCTION NO. 22

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that INSC, Nasser Khatemi, and/or Hamid Assadian infringed any claim of Patent 298, Patent 198 and/or Patent 932, you must then determine the amount of money damages to be awarded to WordTech to compensate it for the infringement.

The amount of those damages must be adequate to compensate WordTech for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

WordTech has the burden to persuade you of the amount of its damages. You should award only those damages that WordTech more likely than not suffered. While WordTech is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. WordTech is not entitled to damages that are remote or speculative.

JURY INSTRUCTION NO. 23

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. A post-litigation reasonable royalty should be higher than a pre-litigation reasonable royalty.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

JURY INSTRUCTION NO. 24

Damages that WordTech may be awarded by you commence on the date that INSC, Nasser Khatemi, and/or Hamid Assadian have both infringed and been notified of Patent 298, Patent 198 and/or Patent 932.

If Patent 298, Patent 198 and/or Patent 932 were granted after the alleged infringing activity began as determined by you, then damages should be calculated as of the date or dates upon which Patent 298, Patent 198 and/or Patent 932 were issued.

PDF created with pdfFactory trial version www.pdffactory.com

JURY INSTRUCTION NO. 25

Infringement of a patent can only be after the patent issues. Therefore,

(a)  infringement, if any, of the 298 patent begins October 31, 2000;

(b)  infringement, if any, of the 198 patent begins March 11, 2003; and

(c)  infringement, if any, of the 932 patent begins November 23, 2004.

All the patents in the suit are related and in general will expire in 20 years from the date of the earliest filed application, that is, 20 years from March 13, 1997.