Daniel R. Richardson, Esq., SBN 165601
Richardson Intellectual Property Law, Prof. Corp.
870 Market Street, Suite 615
San Francisco, CA 94102
(415) 291-8900
Fax: (415) 291-8391
email: danr@richardsonlaw.com

Attorney for Defendants
HAMID ASSADIAN
NASSER KHATEMI
INTEGRATED NETWORK SOLUTIONS CORP.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| WORDTECH SYSTEMS, INC., a California Corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>INTEGRATED NETWORK SOLUTIONS, Inc. a Nevada corporation Corp. DBA INTEGRATED NETWORK SOLUTIONS CORP. AKA INTEGRATED NETWORK SOLUTIONS AKA INTEGRATED SYSTEMS AKA INTERNET NETWORK STORAGE COMPANY, AKA INSC; NASSER KHATEMI, an individual, HAMID ASSADIAN, an Individual, EHTERAM GHODSIAN, an individual, SHOHREH JAVADI, an individual, MICHAEL F. ELLSWORTH, an individual; BRIAN J. DEAN, an individual; SAN JUAN UNIFIED SCHOOL DISTRICT; and DOES 1 – 50,<br><br>       Defendants<br>_____<br>AND RELATED CROSS-ACTION<br>_____ | Case No.: **CIV S 04-1971 MCE EFB**<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW POST-VERDICT [FRCP 50(b)]**<br><br><br>Hearing Date: **April 30, 2009**<br>Time:         **2:00 PM**<br>Courtroom:  7, 14th Floor<br>Judge: Hon. Morrison C. England |

# TABLE OF CONTENTS

**1. AS A MATTER OF LAW, THERE WAS NO POSSIBLE INFRINGEMENT OF THE '932 PATENT, YET THE JURY RETURNED A VERDICT OF PATENT INFRINGEMENT BASED ON THIS PATENT**    **Page   5**

**2. DUE TO LACK OF ACTUAL NOTICE PRIOR TO FILING OF THE COMPLAINT, PLAINTIFF IS ONLY ENTITLED TO POST-FILING INFRINGEMENT DAMAGES, IF ANY**    **Page   5**

**3. HAMID ASSADIAN SHOULD BE DISMISSED DUE TO A LACK OF EVIDENCE OF ANY INDIVIDUAL SALE OF DEVICES, OF ANY CORPORATE OFFICER SOURCE OF LIABILITY AND FOR FAILING TO MEET THE REQUIREMENTS FOR CONTRIBUTORY PATENT INFRINGEMENT**    **Page   8**

**4. PLAINTIFF'S NON-OPERATIONAL CD AUTOLOADER TRIAL EXHIBIT WAS A NON-INFRINGING DEVICE, BUT DUE TO LACK OF EXPERT TESTIMONY AND LACK OF CLAIMS CONSTRUCTION,  A CONFUSED JURY RENDERED A VERDICT CONTRARY TO THE EVIDENCE**    **Page   9**

**5. PLAINTIFF'S EVIDENCE DEMONSTRATED THAT A REASONABLE ROYALTY WAS ABOUT FIVE PERCENT, YET THE JURY RETURNED A VERDICT 15 TIMES THAT AMOUNT IN SPITE OF SPECIFIC JURY INSTRUCTIONS NOT TO "PUNISH" DEFENDANTS**    **Page   12**

**6. THE AFFIRMATIVE DUTY OF DUE CARE AS ARGUED BY PLAINTIFF HAS BEEN SPECIFICALLY OVERRULED BY THE FEDERAL CIRCUIT IN *IN RE SEAGATE***    **Page   13**

**7. THE ARGUMENT OF WILLFUL INFRINGEMENT BY PLAINTIFF HAS BEEN SPECIFICALLY OVERRULED BY THE FEDERAL CIRCUIT IN *IN RE SEAGATE***    **Page   14**

**8. ABSENT A PRELIMINARY INJUNCTION, ENHANCED DAMAGES ARE NOT AVAILABLE FOR POST-FILING CONDUCT OF DEFENDANTS**    **Page   15**

**9. PLAINTIFF MUST BE DENIED ATTORNEY'S FEES**          **Page    15**
**SINCE ENHANCED DAMAGES ARE NOT AVAILABLE**

**10. NASSER KHATEMI SHOULD BE DISMISSED DUE**          **Page    16**
**TO A LACK OF EVIDENCE OF ANY INDIVIDUAL SALE**
**OF DEVICES , OF ANY CORPORATE OFFICER SOURCE**
**OF LIABILITY AND FOR FAILING TO MEET THE**
**REQUIREMENTS FOR CONTRIBUTORY PATENT**
**INFRINGEMENT**

**11. FOLLOWING NOTICE OF THE SUBJECT PATENTS**          **Page    17**
**DEFENDANTS RELIED ON THE DOCTRINE OF PATENT**
**EXHAUSTION, AND IMPLIED LICENSE AND THUS,  DID**
**NOT INFRINGE THE SUBJECT PATENTS**

**12. SUMMARY AND CONCLUSION**          **Page    19**

# TABLE OF CASES AND CODES

## Cases

35 U.S.C. § 271(c) ...........................................................................................................................9, 17

35 U.S.C. Section 287 ..........................................................................................................................5, 6, 7

Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). ........................15

*Amsted* court, *id.* at1469 .................................................................................................................................6

*Amsted Industries Inc. v. Buckeye Steel Castings Co.* 23 F.3d 374, 376, 30 USPQ 2d 1470 (Fed. Cir., 1994)....................15

*Amsted Industries Inc. v. Buckeye Steel Castings Co.* 24 F.3d 178, 187, 30 USPQ 2d 1462,1469 (Fed. Cir. 1994).....................6

*Amsted v. Buckeye,* 24 F.3d 178, 187, 30 USPQ 2d 1462,1469, .........................................................7

*Anton/Bauer, Inc. v. PAG, Ltd.* 329 F.3d 1343, 1350 .............................................................................18

*Cohesive Technologies, Inc. v. Waters Corp.* 543 F.3d 1351, 1374 (Fed. Cir. 2008) ..........................14

*De Forest Radio Telephone Company v. United States,* 273 U.S. 236, 241 (1927) .............................18

*Dunlap v. Schofield,* 152 U.S. 244, 247-248 (1894) ............................................................................6

*FMC Corp. v. Up-Right, Inc.* (Federal Circuit 1994) 21 F.3d 1073, 30 USPQ 2d 1361 ......................17

*FMC Corp. v. Up-Right, Inc.* (Federal Circuit 1994) 21 F.3d 1073, 30 USPQ 2d 1361. ......................9

Hunt v. Armour & Co. 185 F.2d 722, 729, 88 USPQ 53, 58 (7th Cir. 1950)...........................................18

*In Re Seagate Technology, LLC,* 497 F. 3d 1360, 83 USPQ2d 1865 (Fed. Cir. 8-20-2007)..............13, 14

*In Re Seagate Technology, LLC,* Court, *id., at* 1371, ............................................................................14

*In Re Seagate Technology, LLC, id.* ......................................................................................................15

*In Re Seagate Technology, LLC, id., at Page 16* ..................................................................................15

*In Re Seagate Technology, LLC, id., at Par. 3 in Section "I. Willful Infringement", Page 11* ..............13

*Lans v. Digital Equipment Corp.,* 252 F.3d 1320, 59 USPQ 2d 1057, 1061 (fed. Cir. 2001) .................7

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996). ....................................................11

*Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F. 2d 684, 686, 231 USPQ 474, 476 (Fed. Circuit 1986)...................18

*Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed.Cir.1995)..........................................11

*U.S. v. Univis Lens Co.,* 316 U.S. 241 (1942)......................................................................................17

*Underwater Devices, Inc. v. Morrison-Knudsen Co.* 717 F.2d 1380, 1389-1390 (Fed. Cir. 1983).............13

*Wang Laboratories, Inc. v. Mitsubishi Electronics,* 103 F.3d 1571, 1580 (Fed. Cir. 1997)....................19

1
2        Defendants HAMID ASSADIAN, NASSER KHATEMI and INTEGRATED NETWORK

3   SOLUTIONS CORPORATION ("INSC") provide the following memorandum of points and

4   authorities in support of their motion for a Judgment as a Matter of Law (JMOL), post-judgment,

5   pursuant to FRCP Rule 50(b).

6
                                        **ARGUMENT**
7

8   **1.  AS A MATTER OF LAW, THERE WAS NO POSSIBLE INFRINGEMENT OF THE '932
    PATENT, YET THE JURY RETURNED A VERDICT OF PATENT INFRINGEMENT**
9   **BASED ON THIS PATENT**

10
11        The '932 patent was issued on 11/3/2004 (Decl. of Richardson P. 2 Par. 2, Motion Exhibit 'A')

12  and the First Amended Complaint was filed on 09/4/2004 (Decl. of Richardson P. 2 Par. 3, Motion

13  Exhibit 'B').  There were no invoices introduced by Plaintiff for sale of a CD Autoloader after

14  11/3/2004 for the models incorporated into the jury instructions (Decl. of Richardson P. 2 Par. 6,

15
    Motion Exhibit 'F').
16

17        Thus, as a matter of law, there could be no infringement of patent '932, pursuant to the

18  evidence, as all sales were prior to the issuance date of the '932 patent.  Yet the jury verdict was for

19  infringement of this patent (Decl. of Richardson, P. 2 Par. 4, Motion Exhibit 'C', Exhibit Pages 5, 9,

20
    13, 14, 15) and assessing $50,000 in damages.
21

22  **2.  DUE TO LACK OF ACTUAL NOTICE PRIOR TO FILING OF THE COMPLAINT,
    PLAINTIFF IS ONLY ENTITLED TO POST-FILING INFRINGEMENT DAMAGES, IF ANY**
23

24        Title 35 U.S.C. Section 287 sets forth the notice requirements for recovering damages in a

25  patent infringement action as follows:
26
    "(a) Patentees, and persons making, offering for sale, or selling within the United States any
27  patented article for or under them, or importing any patented article into the United States, may
    give notice to the public that the same is patented, either by fixing thereon the word "patent" or
28  the abbreviation "pat.", together with the number of the patent, or when, from the character of

the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. <u>In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.</u>" [emphasis added]

Here, Plaintiff did not offer any evidence of patent marking on the devices (Decl. of Richardson, P. 2 Par. 7, Motion Exhibit 'G'), and Plaintiff's witness, Mr. Tibi Szilagyi testified that he did not have a written license to manufacture and sell the devices (Decl. of Richardson, P. 2 Par. 7, Motion Exhibit 'G'). So pursuant to 35 U.S.C. Section 287(a), in order to collect any damages, Plaintiff must meet the "actual notice" requirement.

The leading federal Circuit case in the actual notice requirement is *Amsted Industries Inc. v. Buckeye Steel Castings Co.* 24 F.3d 178, 187, 30 USPQ 2d 1462,1469 (Fed. Cir. 1994). The *Amsted* court, *id.* at1469, quoted from the U.S. Supreme Court in *Dunlap v. Schofield,* 152 U.S. 244, 247-248 (1894), which held that the "clear meaning" of this section is that a patentee cannot recover damages absent marking or notice to the "particular defendants by informing them of his patent *and of their infringement of it*." [emphasis added]

The *Amsted* court, *id.* at1469, went on to state:

"For purposes of section 287(a), notice must be of "the infringement", not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."

Plaintiff relies on Plaintiff's Trial Exhibit 3 (Decl. of Richardson, P. 3 Par. 9, Motion Exhibit 'I'), which is a letter from CopyPro, Inc. dated December 29, 2000 and signed by David Miller, for actual notice of the 6,141,298 patent and possible infringement. Unfortunately, since the testimony at trial stated that the same letter was sent to about 20 companies that Mr. Miller believed represented the industry, and were potential infringers (Decl. of Richardson P. 3 Par. 10, Motion Exhibit 'J', P. 98

Lines 17 – 22), his letter is no more effective than that cited in the *Amsted v. Buckeye,* 24 F.3d 178, 187, 30 USPQ 2d 1462,1469, where such a general letter was sent to the "whole industry".

Here, the letter makes no mention of the specific claims that Mr. Miller may have believed were infringed, nor did it specify which, if any, of the INSC products being sold were alleged to be infringing devices.  Thus, as a matter of law, this letter does not satisfy the actual notice requirement of 35 U.S.C. Section 287(a).

Plaintiff also relies on Plaintiff's Exhibit 35 (Decl. of Richardson, P. 3 Par. 9, Motion Exhibit 'I'), which is a letter from CopyPro, inc. dated March 25, 2003 and signed by Janine Ogando, General Counsel of CopyPro, Inc.  Unfortunately for Plaintiff, the Federal Circuit, in *Lans v. Digital Equipment Corp.,* 252 F.3d 1320, 59 USPQ 2d 1057, 1061 (fed. Cir. 2001) held that:

"Contrary to Mr. Lans's contentions, notice from someone closely associated with the patentee does not satisfy § 287(a).  After all, only the patentee has authority to grant licenses …"

Here, CopyPro, Inc. is no more than a non-exclusive licensee of the patents (Decl. Richardson, P. 3 Par. 10, Motion Exhibit 'J', Page 99 Lines 7 – 20) and according to this testimony of Mr. Miller, CopyPro no authority to grant licenses.  In addition, the subject letter (Motion Exhibit 'I') does not identify either the specific devices or the specific claims alleged to be infringed.  Thus, as a matter of law, this letter does not satisfy the actual notice requirement of 35 U.S.C. Section 287(a).

Plaintiff also relies on Plaintiff's Exhibit 27 (Decl. of Richardson, P. 3 Par. 9, Motion Exhibit 'I'), which is a letter from CopyPro, inc. dated November 15, 2002 and signed by Janine Ogando, General Counsel of CopyPro, Inc.  This letter fails for the same reasons as Plaintiff's Exhibit 35, discussed, *supra,* except that it does mention a specific model of device allegedly sold by INSC, but fails to set forth the claims alleged to be infringed. Thus, as a matter of law, this letter does not satisfy the actual notice requirement of 35 U.S.C. Section 287(a).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW POST-VERDICT     7

Thus, under authority of both the United States Supreme Court, and the Federal Circuit's interpretations of the actual notice requirement of 35 U.S.C. Section 287(a), the only effective actual notice of the patents to INSC by Plaintiff was the filing of either the initial flawed and superseded complaint on September 22, 2004 or the First Amended Complaint in this matter, on January 28, 2005 (Decl. of Richardson, P. 2 Par. 3).  If the former, the only INSC invoices eligible for damages are those for sale of a CD autoloader pursuant to the jury instructions with dates on and after the earliest date of September 22, 2004.  There were no such sales after that date, since the last sale was 05/14/04 (Decl. of Richardson, P. 2 Par. 6).

Thus, as a matter of law, even if the devices sold by Defendant were infringing, *arguendo*, Plaintiff failed to meet the notice requirements as a matter of law, and under that same law, Plaintiff is not entitled to any damages.

**3.  HAMID ASSADIAN SHOULD BE DISMISSED DUE TO A LACK OF EVIDENCE OF ANY INDIVIDUAL SALE OF DEVICES, OF ANY CORPORATE OFFICER SOURCE OF LIABILITY AND FOR FAILING TO MEET THE REQUIREMENTS FOR CONTRIBUTORY PATENT INFRINGEMENT**

Plaintiff's Complaint asserts direct liability for patent infringement of individual defendant Hamid Assadian ("ASSADIAN") based on an unproved allegation that he held an officer position with the corporate defendant, INSC.  The evidence admitted at trial demonstrated that all allegedly infringing sales were made by the corporation, INSC (Decl. of Richardson, P. 2 Par. 6).

Defendant Hamid Assadian specifically denied having made any sales on his own, independent of INSC (Decl. of Richardson, P. 3 Par. 11, Motion Exhibit 'K').  This evidence was not contraverted by Plaintiff.

In order to carry its burden of proof of direct patent infringement liability with regards this individual Defendant, Plaintiff had to show either that 1) Defendant ASSADIAN  personally engaged

in the sale of allegedly infringing devices, or that 2) there is some officer liability for the sale of allegedly infringing devices by INSC.

As to the first alternative, Plaintiff did not introduce any evidence to demonstrate that ASSADIAN ever made a single sale of an infringing device either on behalf of INSC or as an individual.  This fact was also stated explicitly by ASSADIAN in his testimony (Decl. of Richardson, P. 3 Par. 11, Motion Exhibit 'K').

As to the second alternative, Plaintiff did not introduce any evidence to demonstrate that ASSADIAN held any officer position with INSC at any time.   This fact was also stated explicitly by ASSADIAN in his testimony (Decl. of Richardson, P. 3 Par. 11, Motion Exhibit 'K').

As to contributory patent infringement, 35 U.S.C. § 271(c) states:

"(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

Plaintiff needed to demonstrate that ASSADIAN offers for sale or sells within the United States a material part of the invention that does not have a non-infringing use and requires proof of direct infringement in the United States, *FMC Corp. v. Up-Right, Inc.* (Federal Circuit 1994) 21 F.3d 1073, 30 USPQ 2d 1361.

Thus, as a matter of law, there was no evidence to support a finding of patent infringement either direct or contributory by Defendant Hamid Assadian.  Thus, the jury erred in finding such liability.

**4.  PLAINTIFF'S NON-OPERATIONAL CD AUTOLOADER TRIAL EXHIBIT WAS A NON-INFRINGING DEVICE, BUT DUE TO LACK OF EXPERT TESTIMONY AND LACK OF CLAIMS CONSTRUCTION, A CONFUSED JURY RENDERED A VERDICT CONTRARY TO THE EVIDENCE**

Independent Claim 1, which is the fundamental claim of both the '198 patent (Col. 14 Line 2-3) and the '298 patent (Col. 13 Line 64) which requires: "...at least one set of multiple stacked recordable disk drives...".  (Decl. of Richardson, P. 3 Par. 12-13).  This requirement is repeated in the means plus function claim 12 of patent '298 (Col. 15 Line 3). The key issue with regards this claim is whether the phrase "at least one set" is used to refer to each stack of recordable drives as a "set" or is the phrase used to require that there be at least one set of multiple stacks of drives, i.e. two or more stacks of recordable drives.

The patent file wrappers entered as evidence by Plaintiff show that the USPTO awarded patents '298 and '198 based on a set of a minimum of at least two stacks of recordable disk drives aligned in such a way as to have the drive trays opposite each other (Decl. of Richardson, P. 3 Par. 14-15).  This is clearly evident from the lead patent drawing for each of these two patents (Decl. of Richardson P.3 Par. 12-13) in which the CD autoloader is shown with the "set" of two stacks of drives.

Plaintiff's non-functioning CD autoloader, admitted as Plaintiff's Trial Exhibit 88, was a device alleged to have been sold by Defendants, and was presented to the court as an infringing device. However, the trial testimony by Plaintiff representative Mr. Miller was that the presented device had a single stack of multiple recordable drives (Decl. of Richardson P. 3 Par. 10).   In which Mr. Miller identified a single "pile" of drives in Plaintiff's Trial Exhibit 88.

Further, Defendants presented the operational prior art device, Defendants Trial Exhibit O, the Nistec ALW-501 CD autoloader, which also had a single stack of multiple recordable disk drives (Decl. of Richardson P. 3 Par. 11).

Plaintiff's witness at trial, Mr. Tibi Szilagyi, testified that he had produced his devices, which were all single stacked (Decl. of Richardson P. 3 Par. 8), with the full knowledge and acquiescence of the Plaintiff.  The invoice/sales evidence presented at trial, and summarized here (Decl. of

Richardson, P. 3 Par. 6) is that these same devices were re-sold by Defendants (Decl. of Richardson, P. 3 Par. 8 and 11).

Plaintiff's license agreement with the public company, Primera, Plaintiff's Trial Exhibit 70 (Decl. of Richardson P. 4 Par. 17). With a handwritten modification, specifically excluded any royalty for a single-stacked configuration.

Plaintiff failed to produce any expert testimony to support its position that a single stack of drives is an infringement of either the '298 or the '198 patents.

Thus, under the requirement of Claim 1 of both patent '298 and '198 which requires a set of multiple stacked drives, this Plaintiff Trial Exhibit 88 was not an infringing device.

It is well settled that claim construction is "exclusively within the province of the court". *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996).  Such construction "begins and ends" with the claim language itself, *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1331 (Fed. Cir. 2001), but extrinsic evidence may be consulted" if needed to assist in determining the meaning of scope of technical terms in the claims." *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed.Cir.1995).

The claims construction in the jury instructions for these patents is silent as to this issue.  In Jury instruction 18 (Decl. of Richardson, P. 2 Par. 5, Motion Exhibit 'D', P. 23), there is no mention of the set of drives, yet the specification for the '298 patent (Decl. of Richardson, P. 3 Par. 12, Motion Exhibit 'L') in Column 8 at lines 25 – 29, states:

> "The stacked disk drive receptacle members **82** are placed on top of the deck **22** along the outside of the perimeter of the circle formed by the disk spindle members **52** such that the arm **56** may transfer a disk to the space between the two stacked disk drive receptacle members **82**." [emphasis added]

Here, the specification language assumes and requires a set of two stacks 82 of disk recordable members.  However, as has been shown, *supra*, the accused devices had only one stack.  Without

claims construction to interpret this critical issue, there was no proper direction to the jury for their deliberation.

Thus, the evidence presented at trial supports non-infringement by Defendants as a matter of law, in spite of the confused jury verdict of infringement.

## 5.  PLAINTIFF'S EVIDENCE DEMONSTRATED THAT A REASONABLE ROYALTY WAS ABOUT FIVE PERCENT, YET THE JURY RETURNED A VERDICT 15 TIMES THAT AMOUNT IN SPITE OF SPECIFIC JURY INSTRUCTIONS NOT TO "PUNISH" DEFENDANTS

Plaintiff introduced several executed royalty licenses, evidently to establish a reasonable royalty rate for devices practicing the patents.  I have extracted the percentage of gross sales for each such license and provide the details and summary here for the court in my Declaration P. 4 Par. 18, Motion Exhibit 'R'.  The spreadsheet shows the average royalty as 4.73%.

Plaintiff failed to provide any expert testimony as to a reasonable royalty rate based on gross sales of a device practicing the patents.  Plaintiff's representative, Mr. Miller testified that he had arrived at a total sales figure of about $950,000 of all devices sold by Defendant INSC (Decl. of Richardson P. 3 Par. 10).  This testimony was not supported either by any trial exhibit or by any detailed testimony as to how it was derived.  The testimony was also before the final jury instructions in which Plaintiff narrowed the possible infringing devices and thus the potential damages.

In reviewing the trial exhibit invoices for the jury instruction devices, i.e. RC600, RC6600, and the RC8000 series, I summarized the maximum total sales of CD autoloaders for the stated models as $342,280.00 (Decl. of Richardson, P. 2 Par. 6, Motion Exhibit 'E').  At 5%, this would yield an infringement verdict for $17,114.

The law states that the award of damages for patent infringement shall be no less than a "reasonable royalty". Here, the jury returned a verdict of damages in the amount of $250,000, which is about 15 times the 5% rate of $17,114.

Thus, as a matter of law, the amount of damages assessed by the jury well exceeded their duty under the jury instructions and went way beyond the minimum requirement of the law. Thus, the jury was assessing punitive/exemplary damages when they were specifically instructed to leave that to the Court.

## 6. THE AFFIRMATIVE DUTY OF DUE CARE AS ARGUED BY PLAINTIFF HAS BEEN SPECIFICALLY OVERRULED BY THE FEDERAL CIRCUIT IN *IN RE SEAGATE*

On August 20, 2007, the Federal Circuit rendered a decision in the case of *In Re Seagate Technology, LLC,* 497 F. 3d 1360, 83 USPQ2d 1865 (Fed. Cir. 8-20-2007).

Plaintiff's original trial brief argued that Defendants had a duty of due care to seek the opinion of an expert when they were noticed of the issuance of Plaintiff's patents (Plaintiff Trial Brief, P. 9, Section B). The leading case with regards the duty of due care imposed upon the defendant of a patent infringement lawsuit was *Underwater Devices, Inc. v. Morrison-Knudsen Co.* 717 F.2d 1380, 1389-1390 (Fed. Cir. 1983).

The Federal Circuit held, in *In Re Seagate Technology, LLC, id.,* at Par. 3 in Section "I. Willful Infringement", Page 11:

"In contrast, the duty of care announced in <u>Underwater Devices</u> sets a lower threshold for willful infringement that is more akin to negligence. This standard fails to comport with the general understanding of willfulness in the civil context, <u>Richland Shoe Co.</u>, <u>486 U.S. at 133</u> ("The word `willful'. . . is generally understood to refer to conduct that is not merely negligent."), and it allows for punitive damages in a manner inconsistent with Supreme Court precedent, <u>see, e.g.</u>, <u>Safeco, slip op. at 6-7,18-19, 21 n. 20</u>; <u>Smith v Wade</u>, <u>461 U.S. 30</u>, <u>39-49</u> (1983). Accordingly, we overrule the standard set out in <u>Underwater Devices</u> and hold that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness. Because we abandon the affirmative duty of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel."

Thus, under authority of the Federal Circuit, Plaintiff must show "objective recklessness" on the part of Defendants herein in order to be awarded enhanced damages.

## 7.  THE ARGUMENT OF WILLFUL INFRINGEMENT BY PLAINTIFF HAS BEEN SPECIFICALLY OVERRULED BY THE FEDERAL CIRCUIT IN *IN RE SEAGATE*

Plaintiff argues that "Treble damages may be awarded where the infringement is found to be willful" (Plaintiff's trial brief P. 9, Line 26).  As shown, *supra,* the Federal Circuit has overruled the previous case law in this regard, and as per the holding in *In Re Seagate Technology, LLC, id., at Par. 3 in Section "I. Willful Infringement", Page 11,* Plaintiff must now show "objective recklessness" on the part of Defendants herein in order to be awarded enhanced damages.

The *In Re Seagate Technology, LLC,* Court, *id., at* 1371, was cited in *Cohesive Technologies, Inc. v. Waters Corp.* 543 F.3d 1351, 1374 (Fed. Cir. 2008) as:

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent...If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."

As shown, *supra*, under authority of *In Re Seagate Technology, LLC*, 497 F. 3d 1360, 83 USPQ2d 1865 (Fed. Cir. 8-20-2007). The evidence admitted at trial demonstrated that Defendants believed their single stack CD autoloader devices were non-infringing (Decl. of Richardson, P.3 Par. 11) and thus, they did not behave with "objective recklessness".

Thus, as a matter of law, there was no evidence at trial to support a finding of "objective recklessness", and therefore the jury erred in a finding of willful patent infringement.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW POST-VERDICT     14

**8.  ABSENT A PRELIMINARY INJUNCTION, ENHANCED DAMAGES ARE NOT AVAILABLE FOR POST-FILING CONDUCT OF DEFENDANTS**

Plaintiff's original trial brief argued that it is entitled to damages accruing from the date of its deficient  notice to Defendants in December, 2000 and continuing to the present date (Plaintiff's trial brief P. 10, Line 10).  The Federal Circuit in *In Re Seagate Technology, LLC, id., at Page 16,* held:

> "It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. Fed.R.Civ.Pro. 8, 11(b). So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.  By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. See 35 U.S.C. § 283; Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct."

Here, Plaintiff never sought, nor was it awarded a preliminary injunction, and thus, under authority of *In Re Seagate Technology, LLC, id.,* Plaintiff may only seek enhanced damages for pre-filing conduct.

WHEREFORE Defendants pray the Court to deny Plaintiff's request for enhanced damages due to alleged willful infringement and in the alternative, that they are not entitled to any post filing damages.

**9.  PLAINTIFF MUST BE DENIED ATTORNEY'S FEES SINCE ENHANCED DAMAGES ARE NOT AVAILABLE**

Where the prevailing party is the patent owner, the circumstances that make a case exceptional for an award of attorney's fees generally align with those that would justify increased damages, namely willful infringement, *Amsted Industries Inc. v. Buckeye Steel Castings Co.* 23 F.3d 374, 376, 30 USPQ 2d 1470 (Fed. Cir., 1994).

**10. NASSER KHATEMI SHOULD BE DISMISSED DUE TO A LACK OF EVIDENCE OF ANY INDIVIDUAL SALE OF DEVICES , OF ANY CORPORATE OFFICER SOURCE OF LIABILITY AND FOR FAILING TO MEET THE REQUIREMENTS FOR CONTRIBUTORY PATENT INFRINGEMENT**

Plaintiff has asserted direct liability for patent infringement of individual defendant Nasser Khatemi ("KHATEMI") based on an unproved allegation that he held an officer position with the corporate defendant, INSC.  The evidence admitted at trial demonstrated that all allegedly infringing sales were made by the corporation, INSC.  In order to carry its burden of proof of patent infringement liability with regards this individual Defendant, Plaintiff had to show either that 1) Defendant KHATEMI personally engaged in the sale of allegedly infringing devices, or that 2) there is some officer liability for the sale of allegedly infringing devices by INSC.

As to the first alternative, Plaintiff did not introduce any evidence to demonstrate that KHATEMI ever made a single sale of an infringing device as an individual.  This fact was also stated explicitly by KHATEMI in his testimony (Decl. of Richardson P. 4 Par. 19).  All sales made by KHATEMI were made as a salesman with INSC.  He was specifically identified as the salesman for INSC on most of the invoices introduced by Plaintiff (Decl. of Richardson P. 2 Par. 6).

As to the second alternative, Plaintiff did not introduce any evidence to demonstrate that KHATEMI held any officer position with INSC post the alleged Plaintiff notice of the patents beginning in the year 2000.  The only evidence admitted were undated website pages in which KHATEMI was listed as "President".  However, KHATEMI testified at trial that he and others at INSC would sometimes adopt a title for marketing purposes, but that he never held such a position with any executive responsibility with INSC during the relevant period (Decl. of Richardson P. 4 Par. 19).

As to contributory patent infringement, 35 U.S.C. § 271(c) applies as set forth, supra, and Plaintiff needed to demonstrate that KHATEMI offers for sale or sells within the United States a material part of the invention that does not have a non-infringing use and requires proof of direct infringement in the United States, *FMC Corp. v. Up-Right, Inc.* (Federal Circuit 1994) 21 F.3d 1073, 30 USPQ 2d 1361.

Thus, as a matter of law, there was no evidence to support a finding of patent infringement either direct or contributory by Defendant Nasser Khatemi. Thus, the jury erred in finding any such liability.

## 11. FOLLOWING NOTICE OF THE SUBJECT PATENTS DEFENDANTS RELIED ON THE DOCTRINE OF PATENT EXHAUSTION, AND IMPLIED LICENSE AND THUS, DID NOT INFRINGE THE SUBJECT PATENTS

As stated, supra, it is Defendant's position that they sold only non-infringing single stacked autoloaders purchased from Mr. Tibi Szilagyi. However, if the Court agrees with the jury finding of infringement, then responding to that jury verdict, *arguendo*, Defendants rely on the rule of "patent exhaustion" established by the United States Supreme Court in *U.S. v. Univis Lens Co.,* 316 U.S. 241 (1942), and other cases. In particular, the *Univis, id.,* court held at P. 251 – 252:

> "...the particular form or method by which the monopoly is sought to be extended is immaterial. The first vending of any article manufactured under a patent puts the article beyond the reach of the monopoly which that patent confers. Whether the licensee sells the patented article in its completed form or sells it before completion for the purpose of enabling the buyer to finish and sell it, he has equally parted with the article, and made it the vehicle for transferring to the buyer ownership of the invention with respect to that article."

Thus, where Defendants purchased for resale a device licensed for sale by Plaintiff, the patent monopoly, if any, ended with the sale by the licensee and any subsequent modification or sale by Defendants was not subject to a charge of infringement nor can it be used for enhanced damages.

Mr. Szilagyi confirmed that he had received a notice of the patents from Plaintiff at about the same time that Plaintiff allegedly mailed its letters in the year 2000 to Defendants (Decl. of Richardson P. 3 Par. 8). However, Mr. Szilagyi then testified that due to his prior relationship with Mr. Miller, and with the full knowledge of Mr. Miller, he was allowed to continue his sale of the CD autoloaders without any license fee or royalty payment to Wordtech/Mr. Miller. (Decl. of Richardson P. 3 Par. 8).

The leading case for an implied license is the United States Supreme Court in *De Forest Radio Telephone Company v. United States,* 273 U.S. 236, 241 (1927) which held:

> "A license to make and use a patented article does not depend on formal language, and, as a defense to a subsequent suit for infringement, <u>a license may be inferred from the patent owner's words and acts indicative of his consent,</u> with a reservation of his right to compensation." [emphasis added]

The Federal Circuit, in *Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F. 2d 684, 686, 231 USPQ 474, 476 (Fed. Circuit 1986), states:

> "This court set out two requirements for the grant of an implied license by virtue of a sale of non-patented equipment used to practice a patented invention. <u>First, the equipment involved must have no non-infringing uses</u> (*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.* 750, F.2d 903, 924, 223 USPQ 982, Fed. Circuit 1984) ...<u>Second, the circumstances of the sale must "plainly indicate that the grant of a license should be inferred."</u> Id. at 925, 223 USPQ at 998, quoting Hunt v. Armour & Co. 185 F.2d 722, 729, 88 USPQ 53, 58 (7th Cir. 1950)" [emphasis added]

Here, the devices were specifically manufactured to practice the patent (Decl. of Richardson P. 3 Par. 8) and Mr. Miller/Wordtech knew the devices were being sold into the stream of commerce and he made no effort either to collect a royalty or to bring suit for infringement against Mr. Szilagyi. Thus, Mr. Szilagyi had an implied license to sell his devices to Defendants.

The Federal Circuit in *Anton/Bauer, Inc. v. PAG, Ltd.* 329 F.3d 1343, 1350 stated:

> "The Court's statements in *Univis* demonstrate how closely related the exhaustion doctrine is to the grant of an implied license. Indeed, they suggest that an implied license stems from the exhaustion of a patent right."

The Federal Circuit in *Wang Laboratories, Inc. v. Mitsubishi Electronics,* 103 F.3d 1571, 1580 (Fed. Cir. 1997) stated:

> "In patent law, an implied license merely signifies a patentees waiver of the statutory right to exclude others from making, using, or selling the patented invention."

Under the principle of patent exhaustion, the patent rights of Wordtech ended with any such implied license sale by Mr. Szilagyi to INSC. Thus, as a matter of law Tibi Szilagyi had an implied license for the manufacturing and sale of the CD autoloaders and that Defendant's therefore did not infringe Plaintiff's patents due to patent exhaustion.

## 12. SUMMARY AND CONCLUSION

As a matter of law, there could be no infringement of patent '932, pursuant to the evidence, as all sales were prior to the issuance date of the '932 patent. Even if the devices sold by Defendant were infringing, *arguendo*, Plaintiff failed to meet the notice requirements as a matter of law, and under that same law, Plaintiff is not entitled to any damages. There was no evidence to support a finding of patent infringement either direct or contributory by Defendant Hamid Assadian. Thus, the jury erred in finding such liability.

The lack of clarity in claim construction and the representation by Plaintiff of a single stacked drive device being an infringing device, which it is not, misled the jury into ruling for infringement when there was none as a matter of law. The damages arrived at by the jury were about 15 times a reasonable royalty and thus were to punish Defendants and should be set aside as a matter of law. The affirmative duty of due care no longer exists in patent infringement actions to affix liability.

Willful infringement requires a reckless disregard of the patents and Defendants had a reasonable belief that they were not infringing the patents, therefore as a matter of law, they did not willfully infringe Plaintiff's patents.

Neither enhanced damages nor attorneys fees are available to Plaintiff in this action.  Nasser Khatemi was no more than a salesman for INSC and all sales were made by the corporation, therefore he is not personally liable for either direct or contributory infringement.

Due to the fact that the alleged infringing devices sold by Defendants were manufactured by Mr. Tibi Szilagyi and due to his special relationship with Mr. Miller, he was allowed to manufacture and sell the devices to Defendants.  Due to this fact, Mr. Szilagyi had an implied license to sell the devices and thus, due to patent exhaustion, Defendants did not infringe sale of the Szilagyi devices.

Thus, Defendants did not sell infringing devices, either on the basis of their configuration being that of a single stack or by patent exhaustion having purchased them from Mr. Szilagyi.

Date:  March 26, 2009

Respectfully Submitted,
RICHARDSON INTELLECTUAL PROPERTY LAW, Prof. Corp.

/s/Daniel R. Richardson

Daniel R. Richardson, Esq.
Attorneys for Defendants
HAMID ASSADIAN
NASSER KHATEMI
INTEGRATED NETWORK SOLUTIONS CORP.