1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   WORDTECH SYSTEMS, INC.,              No. 2:04-cv-01971-MCE-EFB
     a California corporation
12
             Plaintiff,
13
         v.                               <u>MEMORANDUM AND ORDER</u>
14
     INTEGRATED NETWORK SOLUTIONS,
15   INC., dba INTEGRATED NETWORK
     SOLUTIONS, CORP. aka
16   INTEGRATED NETWORK SOLUTIONS
     aka INTEGRATED SYSTEMS aka
17   INTEGRATED NETWORK STORAGE
     COMPANY aka INSC; et al.,
18
             Defendants.
19
                         ----oo0oo----
20

21       Wordtech Systems, Inc. ("Plaintiff"), filed the instant

22   action on September 22, 2004, alleging that Defendants infringed

23   on various of its patents.  On November 17, 2008, a jury

24   unanimously found for Plaintiff, determined the infringement was

25   willful, and awarded Plaintiff $250,000.

26       The Court then directed the parties to submit simultaneous

27   briefing on the issues of enhanced damages and attorneys' fees.

28   ///

                                  1

Pursuant to the Court's Order, the parties filed their papers on December 4, 2008.  This Court subsequently awarded Plaintiff treble damages, pre-judgment interest on the compensatory award, attorneys' fees, post-judgment interest, and costs.  The Court also ordered further briefing on the calculations of each of these figures, and now finds as follows.[1]

**ANALYSIS**

**I.    ATTORNEYS' FEES AWARDED PURSUANT TO 35 U.S.C. § 285 AND THIS COURT'S JANUARY 15, 2009, MEMORANDUM AND ORDER**

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  In its prior Order, the Court held such fees are appropriate here.  Thus, the only issue remaining is the requisite valuation.

Plaintiff seeks a total of $745,759.71, comprised of: 1) $150,197.71 allocated to Janine Ogando, In-House Counsel; 2) $65,837.00 allocated to Richard Peterson, Patent Attorney; 3) $107,800.00 allocated to Heidi Timken, Partner, Timken, Johnson & Hwang ("TJH"); 4) $11,352.50 allocated to Leslie Johnson, Partner, TJH; 5) $181,252.50 allocated to Ki Hwang, Associate, TJH; 6) $29,640 allocated to Elizabeth Hwang, Associate, TJH; and 7) $199,680.00 allocated to Christian Martinez, In-House Counsel.  Defendants challenge Plaintiff's fee request on several grounds, each of which is addressed below.

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 78-230(h).

1    **A.    The Applicable Law**

2

3    "The amount of the award is assessed at the discretion of

4    the district court." <u>Lam, Inc. v. Johns-Manville Corp.</u>, 718 F.2d

5    1056, 1068 (Fed. Cir. 1983) (internal citations omitted).  "The

6    most useful starting point for determining the amount of a

7    reasonable fee is the number of hours reasonably expended on the

8    litigation multiplied by a reasonable hourly rate.  This

9    calculation provides an objective basis on which to make an

10   initial estimate of the value of a lawyer's services." <u>Hensley</u>

11   <u>v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

12   "A reasonable hourly rate is the prevailing market rate,

13   defined as the rate prevailing in the community for similar

14   services by lawyers of reasonably comparable skill, experience,

15   and reputation." <u>Sabella v. Secretary of the Dept. Of Health and</u>

16   <u>Human Servs</u>., --- Fed. Cl. ----, 2009 WL 539880, at *3 (Fed. Cl.)

17   (internal citations and quotations omitted).  "Many courts

18   applying this standard conclude that a particular attorney's

19   billing rate is relevant, but not dispositive," evidence of

20   reasonableness.  <u>ICU Medical, Inc. v. Alaris Medical Systems,</u>

21   <u>Inc.</u>, 2007 WL 6137002, at *3 (C.D. Cal.).

22   "In fixing an award of attorneys' fees in those actions in

23   which such an award is appropriate, the Court will consider the

24   following criteria: (1) the time and labor required of the

25   attorney(s); (2) the novelty and difficulty of the questions

26   presented; (3) the skill requisite to perform the legal service

27   properly; (4) the preclusion of other employment by the

28   attorney(s) because of the acceptance of the action;

1  (5) the customary fee charged in matters of the type involved;

2  (6) whether the fee contracted between the attorney and the

3  client is fixed or contingent; (7) any time limitations imposed

4  by the client or the circumstances; (8) the amount of money, or

5  the value of the rights involved, and the results obtained;

6  (9) the experience, reputation and ability of the attorney(s);

7  (10) the 'undesirability' of the action; (11) the nature and

8  length of the professional relationship between the attorney and

9  the client; (12) awards in similar actions; and (13) such other

10  matters as the Court may deem appropriate under the

11  circumstances."  E.D. Cal. Local Rule 54-293.

12      Additionally, "[t]he district court should exclude from this

13  initial fee calculation hours that were not 'reasonably

14  expended.'  Cases may be overstaffed, and the skill and

15  experience of lawyers vary widely.  Counsel for the prevailing

16  party should make a good faith effort to exclude from a fee

17  request the hours that are excessive, redundant, or otherwise

18  unnecessary, just as a lawyer in private practice ethically is

19  obligated to exclude such hours from his fee submission.  'In the

20  private sector, 'billing judgment' is an important component in

21  fee setting.  It is no less important here.  Hours that are not

22  properly billed to one's *client* also are not properly billed to

23  one's *adversary* pursuant to statutory authority.'" Hensley, 461

24  at 434 (emphasis in original), quoting Copeland v. Marshall, 641

25  F.2d 880, 891 (D.C. Cir. 1980).

26  ///

27  ///

28  ///

4

1        Finally, "it is clearly established in the Ninth Circuit
2    that it is the *applicant's* burden to produce specific evidence,
3    other than the declarations of interested counsel, that the
4    requested rates are in line with those prevailing in the
5    community for lawyers with comparable *skill* and *reputation*."
6    Navarro v. General Nutrition Corp., 2005 WL 2333803, *8 (N.D.
7    Cal. 2005); see also Lam, 718 F.2d at 1068 ("In determining the
8    reasonableness of the award, there must be some evidence to
9    support the reasonableness of, *inter alia*, the billing rate
10   charged and the number of hours expended."); PPG Industries, Inc.
11   v. Celanese Polymer Specialties Co., Inc., 840 F.2d 1565, 1570
12   (Fed. Cir. 1988) ("Attorney fees are allowable if they are based
13   on records that are substantially reconstructed and reasonably
14   accurate.").  Nevertheless, "where documentation is inadequate,
15   the district court is not relieved of its obligation to award a
16   reasonable fee...[A] district court itself has experience in
17   determining what are reasonable hours and reasonable fees, and
18   should rely on that experience and knowledge if the documentation
19   is considered inadequate." Slimfold Mfg. Co., Inc. v. Kinkead
20   Industries, Inc., 932 F.2d 1453, 1459 (Fed. Cir. 1991) (internal
21   quotations and citations omitted).
22        In the context of the above case law, the Court will now
23   address Defendants' challenges to: 1) the rates sought by
24   Plaintiff for various of its counsel; 2) the reasonableness of
25   hours billed in pursuit of absent or voluntarily dismissed
26   Defendants or on allegedly unsuccessful or duplicative motions;
27   and 3) Plaintiff's evidentiary support for its requested recovery
28   of Ms. Ogando's fees.

1      **B.    Reasonable Hourly Rates**

2

3        Plaintiff requests $325 per hour for the services of

4  Mr. Martinez and two of the TJH associates.  Plaintiff also seeks

5  an hourly rates of $400 and $475 for the compensation of the TJH

6  partners.  With the above legal backdrop in mind, Defendants

7  argue that the reasonableness of these fees is unsupported by the

8  evidence.

9        As a threshold matter, the Court agrees that the evidence

10 submitted by Plaintiff in support of its proposed rates is

11 minimal.  The sole "survey" submitted, which provides only

12 marginal support for rates in the $325 range, lacks any detailed

13 information pertaining to the individuals listed and contains fee

14 information from various regions not relevant here.  The

15 remaining evidence is limited to Mr. Martinez' cursory statements

16 regarding each attorneys' most basic qualifications, statements

17 that provide no real insight into counsels' actual capabilities.

18       Additionally, though technically a patent action, this case

19 was not complicated and did not involve even those fundamental

20 procedures typically standard in such litigation.  Indeed, the

21 Court likens this case to one sounding more in breach of contract

22 than patent.  No separate Markman hearing was necessary, nor were

23 the details of the infringed upon product particularly

24 cumbersome.  Moreover, the jury was able to process all of the

25 facts and return a unanimous verdict on all counts in less than

26 two days.  Accordingly, in reaching the reduced rates below, the

27 Court considered both the relative simplicity of the instant

28 action and the inadequacy of Plaintiff's current evidence.

1     In conducting its own survey of reasonable rates in cases
2 the Court considered comparable to this litigation, it also used
3 as additional benchmark the $300 per hour sought by Plaintiff for
4 the services of Mr. Peterson, a patent attorney admitted to
5 practice in 1967.  Defendants do not object to this rate, and the
6 Court agrees that $300 is a reasonable valuation of
7 Mr. Peterson's services in this locale.

8     In light of the reasonableness of a $300 per hour fee for an
9 attorney who specializes in patent law and has been practicing
10 for approximately 40 years, the Court further determines $300 per
11 hour to be equally reasonable rate compensation for the work
12 performed by Leslie Johnson, a TJH partner practicing for nearly
13 as long as Mr. Peterson.  Furthermore, since Plaintiff concedes
14 that Ms. Johnson reasonably bills at a higher rate than does
15 Ms. Timken, who, though also a partner has been practicing only
16 since the early nineties, and since the record lacks any
17 information indicating otherwise, the Court finds that $275 per
18 hour is a reasonable valuation of Ms. Timken's services.

19     For the same reasons, the Court similarly finds it necessary
20 to reduce the rates sought for the more junior attorneys charged
21 with litigating this case.  The $325 rate Plaintiffs initially
22 sought equated to approximately seventy to eighty percent of
23 those rates requested for the services of more senior counsel.
24 Accordingly, this Court finds $225 per hour, or seventy-five
25 perecent of the above awarded $300 per hour fee, is reasonable
26 compensation for the services of Christian Martinez, Elizabeth
27 Hwang, and Ki Hwang.
28 ///

7

These reduced rates are proportionate to those allocated to more experienced counsel and, considering all of the above factors, are commensurate with those applicable in like cases in this market.

### C.    Reasonable Hours Expended

Defendants next contend that they should not be held liable for the cost of unsuccessful or duplicative labor.  Defendants first claim fees paid for litigating against the now dismissed San Juan School District, for pursuing an unsuccessful default judgment against co-Defendant Ehteram Ghodsian, and for attempting to pierce INSC's corporate veil, should be disallowed. According to Defendant, Plaintiff cannot recover litigation expenses incurred in pursuing these unsuccessful motions or in attempting to join Defendants who either never appeared in this Court or were eventually voluntarily dismissed.

However, Defendants' argument ignores the results actually achieved by Plaintiff's counsel in this litigation.  "When a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.'"  <u>Mathis v. Spears</u>, 857 F.2d 749, 756 (Fed. Cir. 1988), quoting <u>Hensley</u>, 461 U.S. at 435.

///

///

1    In such circumstances, "[t]he general rule is, that when a

2 wrong has been done, and the law gives a remedy, the compensation

3 shall be equal to the injury.  The latter is the standard by

4 which the former is to be measured.  The injured party is to be

5 placed, as near as may be, in the situation he would have

6 occupied if the wrong had not been committed."  Id., at 753,

7 quoting Albermarle Paper Co. v. Moody, 422 U.S. 405, 418-19

8 (1975).  Such a wrong having occurred here, the Court will not

9 reduce the fee award for the cost of the challenged portions of

10 this litigation, which were undertaken in good faith and related

11 to Plaintiff's ultimate success.

12    Indeed, Plaintiff's counsel produced just the sort of

13 excellent results referred to above, and the Court is justified

14 in awarding counsel a fully compensatory fee.  The jury in this

15 case unanimously found for Plaintiff on all counts, awarded

16 Plaintiff $250,000, and determined that Defendants acted

17 willfully.  The Court subsequently concluded that the willfulness

18 of Defendants' actions rose to the level warranting treble

19 damages, fees, and costs.  Accordingly, Plaintiff was entirely

20 successful in bringing this action, and should be appropriately

21 compensated for the harm it was determined to have suffered.

22 Thus, Defendants' arguments to the contrary are rejected.

23    Defendants next assert that Plaintiff is improperly

24 attempting to recover duplicative fees paid to TJH for work

25 performed litigating other cases.  Specifically, according to

26 Defendants, TJH invoices referenced "Amtren" and "Mediatechnics,"

27 indicating charges that should be split among multiple client

28 accounts.

9

1    Defendants also contend that only $117,355.00 of the submitted

2    billings refer to any of them by name, rendering the remaining

3    charges unrecoverable.

4        The Court declines Defendants' invitation to award fees for

5    only those billing records that specifically reference them by

6    name and finds the general references to Amtren to be the result

7    of ministerial error.   Nevertheless, there are a number of

8    billings that are properly chargeable not only to this action,

9    but to other pending litigation as well.   Accordingly, as

10   follows, the Court hereby reduces the hours comprising the

11   instant award to reflect the fact that a portion of the charges

12   billed should properly be allocated to other clients:

13       1.   On Statement No. 445, dated May 31, 2007, Ki Hwang
              billed 1.20 hours for conferring with Leslie
14            Johnson regarding a new lawsuit in the Northern
              District.   Because this entry was apparently
15            allocable, in part, to other litigation, the Court
              reduced the hours billed by fifty percent to .60.
16
         2.   The billing by Ki Hwang on Statement No. 744,
17            dated October 31, 2007, was similarly reduced by
              .35 hours.
18
         3.   Several entries from Statement No. 798, dated
19            November 30, 2007, were reduced for the same
              reasons.   Accordingly, Ki Hwang's hours were
20            reduced by 2.25, Heidi Timken's hours were reduced
              by 5.7, and Leslie Johnson's hours were reduced by
21            1.2.

22       4.   Similarly, on Statement No. 850, dated December
              31, 2007, Ki Hwang's hours were reduced by 2.0.
23

24       Thus, for the above reasons, Plaintiff is entitled to the

25   following reasonable fees:

26   ///

27   ///

28   ///

10

Richard Peterson: ($300 x 189.50) + ($175 x 19.50) + ($150 x 5) = **$61,012.50**[2]

Heidi Timken: $275 x 263.80 = **$72,545.00**

Leslie Johnson: $300 x 22.7 = **$6,810.00**

Ki Hwang: $225 x 552.5 = **$124,312.50**

Elizabeth Hwang: $225 x 91.2 = **$20,520.00**

Christian Martinez: $225 x 601.90 = **$135,427.50**

### D.    Reasonableness of Janine Ogando's Fees

Finally, Defendants challenge Plaintiff's request for the recovery of fees for work performed by Ms. Ogando arguing that Ms. Ogando was not actually Plaintiff's in-house counsel and that Plaintiff failed to provide adequate documentation for her asserted salary or work performed.  Though the Court will undertake here the same type of discussion in which it engaged above, it is most efficient to evaluate Ms. Ogando's fees separately as Plaintiffs sought recovery for her services, not in terms of her hours billed, but instead by reference to her estimated salary.

First, there is sufficient evidence in the record to show that Ms. Ogando did operate as in-house counsel for Plaintiff, despite receiving payment from Plaintiff's sister company. Accordingly, Defendants' argument to the contrary fails.

---

[2] Defendants raise no challenge to the reduced rates attributable to travel time, which the Court agrees are reasonable.  Furthermore, the Court rejects Plaintiff's request to recover $350 for Mr. Peterson's time in trial, as Mr. Martinez was charged with onus of the burden of trying this case.

1    However, the Court agrees with Defendants that Plaintiff's

2  only evidence supporting its proposed fee recovery, which is

3  premised on the theory that it is entitled to recover a

4  proportional amount of Ms. Ogando's salary, is not merely

5  inadequate, but is wholly lacking.  Plaintiff's evidence consists

6  solely of Ms. Ogando's statements that: 1) on information and

7  belief, but not personal knowledge, over the two-year period

8  during which she litigated this case, her salary plus applicable

9  overhead is estimated to be $187,747.14; and 2) she spent 80% of

10  her time over the course of those two years on the instant

11  litigation.  Her calculations, by conservative estimates result

12  in a billing of over 3000 hours.  Nevertheless, Plaintiff

13  submitted no evidence substantiating these numbers.

14    Despite the glaring lack of support for Ms. Ogando's

15  averments, Plaintiff professes that its request is reasonably

16  supported, arguing "Defendants ignore case law permitting an

17  award of attorneys' fees for in-house counsel where reasonably

18  accurate and documented."  Reply, 1:27-28.  Plaintiff then points

19  to the docket as evidence of Ms. Ogando's work product over the

20  course of her time litigating this case.  However, by no stretch

21  of the imagination do Ms. Ogando's minimal statements, even

22  coupled with the docket, constitute reasonably accurate

23  documentation.

24    Thus, there is no way to determine from Plaintiff's conclusory

25  and self-serving assertions alone the amount of recoverable time

26  Ms. Ogando actually expended on this case.  Additionally, since no

27  documentation is provided to substantiate her estimated salary and

28  overhead, that evidence is, itself, suspect.

1  Nevertheless, in an attempt to reach some principled decision,
2  and after reviewing the docket for the period in which Ms. Ogando
3  litigated this action, the Court finds 600 hours reasonably
4  allocable to the work performed over the first two years of this
5  protracted litigation.[3]  However, in light of the almost
6  nonexistent nature of evidence pertaining to Ms. Ogando's work
7  and the Court's consequent inability to determine whether any of
8  the above 600 hours are, *inter alia*, duplicative of other work or
9  partially chargeable to any of Plaintiff's sister companies, the
10 Court determines only 300 of those hours can be properly
11 attributed to Ms. Ogando's work on the instant case.

12     In addition, after considering the same factors that
13 informed the Court's above discussion, the Court next estimates
14 Ms. Ogando's services to be reasonably valued at $225 per hour.
15 See Milgard Tempering, Inc. v. Selas Corp. Of America, 761 F.2d
16 553, 558 (9th Cir. 1985) (directing the district court to
17 "examine the modern trend toward providing reasonable fees based
18 on the market rate when 'a party is represented by both private
19 counsel and in-house counsel who actively participate in the
20 preparation of the case.'"), quoting B-E-C-K Constructors v.
21 State Dept. Of Hwys., 604 P.2d 578, 585 (Alaska 1979).
22 ///

23

24     [3] In reaching this figure, the Court considered the fact
25 that Ms. Ogando initiated this action, opposed a motion to
   dismiss and motion for summary judgment, and engaged in extensive
   and adversarial discovery entailing the filing of multiple
26 motions before this Court.  The Court also considered recent case
   law evaluating hours expended on similar filings, the hours
27 required of other attorneys which this Court has already deemed
   reasonable, and the need for Ms. Ogando to consult with her co-
28 counsel, Mr. Peterson, throughout her tenure on this case.

While it is possible that, based on the length of time in which she has been admitted to the Bar, this rate could be considered relatively low, the Court is able to reach no other conclusion because Plaintiff provided no details as to Ms. Ogando's expertise, skill, or experience.  Accordingly, Plaintiff is entitled to recover a total of **$67,500.00** for Ms. Ogando's services.

### E.   Conclusion

In sum, based on the evidence submitted and the above discussion, Plaintiff is entitled to recover **$488,127.50** in reasonable attorneys' fees.

## II.   PRE-JUDGMENT INTEREST AWARDED

In its January 15, 2009, Order, the Court awarded Plaintiff pre-judgment interest on the $250,000 damages award.  "[T]he underlying purpose of the provision strongly suggests that pre-judgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for the infringement." General Motors Corp. v. Devex Corp., 461 U.S. 648, 654 (1983). "The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation...In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement.

An award of interest from the time that the royalty payments
would have been received merely serves to make the patent owner
whole, since his damages consist not only of the value of the
royalty payments but also of the foregone use of the money
between the time of infringement and the date of the judgment."
Id. at 655-656.

"The rate of prejudgment interest and whether it should be
compounded or uncompounded are matters left largely to the
discretion of the district court."   Bio-Rad Laboratories, Inc. v.
Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986).
"The district court may 'fix' the interest and select an award
above the statutory rate, or select an award at the prime rate.
Once the claimant has affirmatively demonstrated that a higher
rate should be used, the district court may fix the interest at
that higher rate."   Lam, 718 F.2d at 1066 (internal citations
omitted).

Plaintiff seeks application of the California statutory rate
applicable in contract actions.   See Cal. Civ. Code § 3289(b)
("If a contract entered into after January 1, 1986, does not
stipulate a legal rate of interest, the obligation shall bear
interest at a rate of 10 percent per annum after a breach").
However, Plaintiff also produced evidence at trial showing that
the average reasonable royalty rate charged was approximately
five percent and the rate charged for past-due payments was ten
percent.

///

///

///

15

1  Therefore, this Court finds that the California statutory rate

2  for liquidated amounts, which is seven percent and falls in the

3  mid-range of those rates charged for timely and past-due royalty

4  payments, will adequately compensate Plaintiff for the instant

5  infringement.  Cal. Const. Art. 15, § 1; See also In re Hayes

6  Microcomputer Products Inc., Patent Litigation, 766 F. Supp. 818,

7  824 (N.D. Cal. 1991) (plaintiff "failed to convince the court of

8  the necessity to depart from the California statutory rate of

9  seven (7) percent.").  Accordingly, Plaintiff is hereby awarded

10 simple interest at seven percent accruing from the date of first

11 infringement on each patent.  See id.  Total interest earned

12 through March 16, 2009, is **$110,705.47.**[4]

13

14 **III. POST-JUDGMENT INTEREST AWARDED**

15

16      Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed

17 on any money judgment in a civil case recovered in a district

18 court...Such interest shall be calculated from the date of the

19 entry of the judgment, at a rate equal to the weekly average

20 1-year constant maturity Treasury yield, as published by the

21 Board of Governors of the Federal Reserve System, for the

22 calendar week preceding the date of the judgment."

23 ///

24

25      [4] '298 Patent: $150,000 x 7% for the period of February 1,
   2002, to March 16, 2009 = $74,765.75

26      '198 Patent: $50,000 x7% for the period of April 1, 2003, to
27 March 16, 2009 = $20,856.16.

28      '932 Patent: $50,000 x 7% for the period of November 23,
   2004, to March 16, 2009 = $15,083.56.

Accordingly, Defendants are ordered to pay post-judgment interest of **.70** percent beginning on the date the Clerk of the Court entered judgment in this case, March 16, 2009.  <u>See</u> Federal Reserve board, <u>Selected Interest Rates</u>, available at http://www.federalreserve.gov/releases/h15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt.

**IV.  COSTS**

    Finally, Plaintiff submitted a Bill of Costs seeking $3760.29, including $105 for fees for service of summons, $3592.25 for the cost of preparing necessary transcripts, and $63.04 for witness fees.  However, no itemization or documentation was attached supporting Plaintiff's request for service fees or for fees paid to the court reporter.  Thus, the Court taxes costs against Defendants only in the amount of **$63.04.**

///
///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

In sum, for the above reasons, Plaintiff is entitled to recover **$488,127.50** in attorney's fees and **$110,705.47** in pre-judgment interest.  Plaintiff is further entitled to recover from Defendants post-judgment interest of **.70** percent calculated from the date of March 16, 2009, through receipt of payment.  Finally, costs shall be taxed against Defendant in the amount of **$63.04**. The Clerk of the Court is directed to issue an Amended Judgment, incorporating the terms of this Order, forthwith.

IT IS SO ORDERED.

Dated: April 10, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

18